NATIONAL ASSOCIATION OF MINORITY CONTRACTORS, DAYTON CHAPTER, Plaintiff,

v.

Mel MARTINEZ, Secretary of United States Department of Housing and Urban Development, et al., Defendants.

No. C–3–02–404.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 18, 2002.

Michael C. Thompson, Mia Wortham–Spells, Dayton, OH, for plaintiff.

Paula Vinette Durden, Dayton, OH, Robert A. Graham, Lee P. Reno, Washington, DC, Scott Allen King, Christine M. Haaker, Dayton, OH, for defendant.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (DOC. # 2), WITHOUT PREJUDICE, AND OVERRULING DEFENDANTS' JOINT MOTION TO DISMISS (DOC. # 5), WITHOUT PREJUDICE; PLAINTIFF DIRECTED TO SHOW CAUSE AS TO WHY ITS COMPLAINT SHOULD NOT BE DISMISSED ON PRINCIPLES OF RIPENESS AND/OR STANDING

RICE, Chief Judge.

The Plaintiff in this action is the Dayton Chapter of the National Association of Minority Contractors ("NAMC"). The named Defendants are Mel Martinez, Secretary of the United States Department of Housing and Urban Development ("Secretary Martinez" & "HUD," respectively), Roland Turpin, Director of the Dayton Metropolitan Housing Authority, the Dayton Metropolitan Housing Authority itself ("DMHA"), Old Dayton View LLC ("Old Dayton View"), TCG Development Services ("TGC"), Oberer Residential Construction Ltd ("Oberer Residential") and Oberer DVA, Ltd ("Oberer DVA"). In very basic terms, HUD was created by Congress to assist local governments in their efforts to address housing issues affecting their low-income residents. *See* 42 U.S.C. §§ 3531 & 3532. In its Complaint (Doc. # 1), the NAMC alleges that the Defendants herein are in violation, or will be in violation, of several regulations promulgated by HUD, and, as a result, are also in violation of various civil rights laws, 42 U.S.C. §§ 1981, 1982, 1983 & 1985. Accordingly, it is seeking a declaratory judgment that the Defendants must comply with said regulations and laws, and an injunction against all alleged acts or proposed acts of theirs which will, allegedly, violate same. In furtherance of its aims, it has filed a Motion for a Preliminary Injunction (Doc. # 2). Subsequent to the filing of said Motion, the Court sustained an Agreed Order Dismissing Secretary Martinez Without Prejudice (Doc. # 11).[1]

1. As part of the Agreed Order signed by the Plaintiff and Secretary Martinez, several facts were stipulated to by both such parties. Because said stipulations arise outside of the pleadings, the Court will not consider them in its ruling herein.

The other Defendants ("Defendants") now move for dismissal on several grounds (*see* Doc. # 5), pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to wit: that this Court lacks subject matter jurisdiction; that the Plaintiff has failed to exhaust its administrative remedies; and that the Plaintiff has failed to state a claim upon which relief can be granted.

For the reasons which follow, the Court shall OVERRULE, without prejudice, both the Plaintiff's Motion for a Preliminary Injunction and the Defendants' Joint Motion to Dismiss, and order the Plaintiff to show cause as to why its Complaint should not be dismissed on principles of ripeness and standing.

### I. Standard of Analysis for Rule 12(b)(6) and 12(b)(1) Motions to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may only consider the facts as pled in the Complaint in deciding whether the Plaintiff has stated a valid claim. *See Nelson v. Miller,* 170 F.3d 641, 649 (6th Cir.1999). "A court should not dismiss a plaintiff's complaint under Rule 12(b)(6) unless, after construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, the court determines that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (citation omitted); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "When a party files a motion to dismiss under Rule 12(b)(6), the district court is instructed to treat the motion as one for summary judgment if either party submits additional materials 'outside the pleadings.'" *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). However, documents attached to and referenced in a complaint are considered part of the pleadings and can therefore be referenced in deciding a motion brought under Rule 12(b)(6). *See Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997). Indeed, if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document. *See The Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union,* 221 F.2d 644, 647 (6th Cir.1955).

In *Ohio National Life,* the Sixth Circuit laid out the procedural framework for motions brought under Rule 12(b)(1):

> Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a factual attack, as here, no presumptive truthfulness applies to the factual allegations. Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1364, at 662–64 (West 1969). When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. (Citations omitted.)

922 F.2d at 325. Whereas a court cannot consider factual materials outside the pleadings, which go to the merits of the plaintiff's claim, without converting a Rule

12(b)(6) motion into one for summary judgment, the consideration of "jurisdictional facts," in contrast, does not require a Rule 12(b)(1) motion to be converted into a summary judgment motion. *See id.*

## II. *Factual Background*

The Court will set forth the facts as pled in the Complaint.[2] The NAMC is a non-profit corporation whose membership is comprised of minority general contractors and subcontractors who work and routinely bid on construction contracts in Montgomery County, Ohio.[3] (Compl. ¶ 5; Abney Aff., Compl. at Ex. 1, ¶ 2.)[4] Some time prior to the filing of the NAMC's Complaint, HUD approved a $26 million federal grant for a neighborhood redevelopment project in Dayton, Ohio, known as the Hope VI Program. (Compl. ¶ 6.) Additional funds for the program were obtained from other, private sources, raising the project's total funding to over $44 million. (*Id.*) Defendant DMHA, a non-profit organization formed under the laws of Ohio, is the local governmental housing authority vested with the responsibility of overseeing the use of the HUD grant funds. (*Id.* ¶ 7.) Defendant Old Dayton View is a co-developer of the Hope VI Program. (*Id.* ¶ 8.) Defendant TGC is the majority shareholder in Old Dayton View. (*Id.* ¶ 9.) Defendant Oberer DVA is another shareholder in Old Dayton View. (*Id.* ¶ 10.) Defendant Oberer Residential is an affiliate of Oberer DVA. (*Id.* ¶ 11.)

Old Dayton View has indicated that it "desires to hire" Oberer Residential as the general contractor for each of the Hope VI Program developments, provided it can demonstrate to HUD's satisfaction that Oberer Residential's bid on each is the lowest pursuant to a competitive bidding process. (*Id.* ¶ 14; Procurement Policy & Guidelines ("Procurement Policy"), Compl. at Ex. 3, at unnumbered p. 2.)[5] Old Dayton View has also indicated that, as an alternative means of selecting Oberer Residential as its general contractor, it "may" seek a waiver from mandatory compliance with a certain HUD regulation which generally requires a competitive bidding process to be used in the procurement of a general contractor. (Compl. ¶ 15; Procurement Policy at unnumbered p. 2.)

## III. *Analysis*

The NAMC prays for several declaratory judgments, pursuant to 28 U.S.C.

---

**2.** While the Court will treat the *factual* pleadings as true, it gives no special attention to the Plaintiff's myriad conclusions of law, as incorporated in its Complaint.

**3.** The Plaintiff asserts that it has standing to sue on behalf of "all other persons similarly situated" under Rule 23(a) & (b)(2) of the Federal Rules of Civil Procedure, to wit, that it has standing to sue on behalf of a class. (Compl. ¶ 5.) S.D. Ohio Civ. R. 23.1 requires a party asserting a class action to so designate on the face of its complaint, something the NAMC has not done. Furthermore, while the time period for moving for class certification, under Fed.R.Civ.P. 23(c)(1) and S.D. Ohio Civ. P.R. 23.3, has not expired, there is no request for class certification in the NAMC's prayer for relief. (*See* Compl. at 5–6.) Accordingly, at present, the Court will not treat the herein Complaint as one asserting a class

action, and will regard the assertions of class standing in paragraph 5 of said Complaint as surplusage.

**4.** The affidavit of David Abney, president of the Dayton chapter of the NAMC, was attached to the Complaint, and incorporated therein at paragraph 5.

**5.** The Procurement Policy was attached to the Complaint, and incorporated therein at paragraph 14. Although the Plaintiff alleged that Old Dayton View "has indicated that they *will* hire" Oberer Residential for the Hope VI Program developments, the very document it cites for the proposition, the Procurement Policy, indicates only that this is what it "desires" to do. Pursuant to the Sixth Circuit's holding in *The Mengel Company, supra,* the Court accepts the language of the attached document as controlling.

§ 2201 (creating a declaratory judgment remedy where there exists an "actual controversy"), namely that it has raised a case or controversy, that the Defendants must comply with certain HUD regulations, and that the actions proposed by the Defendants will violate said regulations and, in the process, federal civil rights laws. It also seeks a writ of mandamus to compel Secretary Martinez to enforce said regulations, and an injunction enjoining the Defendants from violating same. The Defendants contend that this Court lacks subject matter jurisdiction, that the NAMC has failed to exhaust its administrative remedies,[6] and that it has failed to state a claim upon which relief can be granted.

As noted, Old Dayton View expressed its "desire" to hire Oberer Residential for each of the Hope VI Program developments. It stated that it would do so pursuant to the competitive bidding process, but that it might, in the alternative, seek to hire Oberer Residential pursuant to a waiver of the competitive bidding requirement.

24 C.F.R., Part 941, regulates the means by which HUD may assist local governmental housing authorities, and, more specifically, subpart F thereunder addresses how local housing authorities may use HUD grants in combination with funds received from other sources to finance public housing projects (referred to as "mixed financing" development projects). Pursuant to this subpart, the local housing authority can enter into a partnership with a third-party entity for assistance in developing such projects and/or for taking ownership of the housing units upon their completion. 24 C.F.R. §§ 941.600 & 941.604. Section 941.606(n)(1)(ii) requires that in selecting to work with a "partner" and/or an "owner entity," as such are referred to in the regulations, the local housing authority must use an open and competitive process. Furthermore:

> If the partner and/or owner entity (or any other entity with an identity of interests with such parties) wants to serve as the general contractor for the project or development, it may award itself the construction contract only if it can demonstrate to HUD's satisfaction that its bid is the lowest bid submitted in re-

---

**6.** It actually appears that the Defendants' subject matter jurisdiction and failure to exhaust arguments are one and the same. This is understandable. Although the Sixth Circuit has recognized that the failure to exhaust administrative remedies is not inherently a jurisdictional defect, *see, e.g., Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 309 (6th Cir.2000), *cert. denied,* 533 U.S. 951, 121 S.Ct. 2594, 150 L.Ed.2d 752 (2001), the appellate court has at times affirmed dismissals granted pursuant to the Rule 12(b)(1) rubric where the basis for such has been the failure to exhaust, given the fact that it is generally considered a condition precedent to suit, such that if the matter is raised by the defendant, it renders the complaint fatally defective. *See, e.g., Duncan v. Rolm Mil–Spec Computers,* 917 F.2d 261, 265–66 (6th Cir.1990) (affirming Rule 12(b)(1) order of dismissal in a wrongful discharge suit against a private employer); *but see Youseff v. Ford Motor Co.,* 2000 WL 799314, at *3 n. 3 (6th Cir. June 6, 2000) (recognizing confusion in the federal courts as to how to treat the issue of exhaustion under the existing Civil Rules, but noting that it should not be under Rule 12(b)(1)). Of course, where the suit is one against the United States, where the United States has waived its sovereign immunity from suit but has also imposed a preliminary requirement that the plaintiff exhaust his administrative remedies, the failure to exhaust does go directly to subject matter jurisdiction. *See, e.g., Singleton v. United States,* 277 F.3d 864, 872–73 (6th Cir. 2002). Whether a failure to exhaust defense raised by defendants other than the United States is to be treated under Rule 12(b)(1), 12(b)(6), 56 or even its own unique common law doctrine, is an interesting question, but one which the Court will leave to the higher courts to settle. It is enough to note that if the defense is well taken, dismissal is proper.

sponse to a public request for bids [as described at 24 C.F.R. § 85.36(d) ].

*Id.* § 941.606(n)(1)(ii)(B). While there is no indication that Old Dayton View is an "owner entity," there is ample reason for the Court to assume, on the basis of the facts as plead, that the Hope VI Program is a mixed financing development project, as contemplated by 24 C.F.R., Part 941, subpart F, and that Old Dayton View is DMHA's "partner" for purposes of developing the various Hope VI Program projects.[7]

With respect to how development project services are to be procured, the Court turns to 24 C.F.R., Part 85. As a whole, Part 85 sets forth the administrative requirements governing grants of HUD funds to local governments. Section 85.36, more specifically, pertains to how grant money may be allocated in procuring services for grant projects. This regulation requires HUD grantees and subgrantees (terms which the Court will explain in its next paragraph), to procure services pursuant to federal, state, and local laws, and to maintain a written code of standards applicable to all of their employees, agents, etc., for purposes of ensuring compliance with said laws during the procurement process. Section 85.36(b)(3), the particular provision to which the Plaintiff directs the Court's attention, prohibits the award of contracts and subcontracts by the employees, officers, or agents of the grantee or subgrantee where such an award would give rise to a conflict of interest, be it real or apparent. The provision further clarifies that such a conflict would arise when: (i) the employee, officer or agent (of the grantee or subgrantee), (ii) any member of his immediate family, (iii) his or her partner, or (iv) an organization which employs, or is about to employ, any of the above, has a financial interest in the firm selected for the grant award.

A "grantee" is defined by HUD as the government to which the HUD grant is awarded and which is accountable for the grant funds. 24 C.F.R. § 85.3. "Government" itself is defined as a "state or local government," and "local government" is further defined to include a "local public authority," which includes a "public housing agency." Thus, in this case, the grantee is the DMHA.[8] A "subgrantee" is defined in the same regulation as the government "or other legal entity" to which a subgrant is awarded by the grantee, but the term "subgrant" does not include "procurement purchases," such as construction contracts (as described at § 85.36(d)(2)). In other words, a general contractor does not become a "subgrantee" merely by virtue of his being awarded a general construction contract. The Court need not determine if Old Dayton View is the DMHA's subgrantee in addition to being its partner, such that it must heed the strictures of Part 85 in awarding contracts by virtue of its "subgrantee" status alone, because § 941.602(d) expressly incorporates the regulations of Part 85

---

7. This is the most reasonable inference to draw at this time, on the basis of the facts, as pled, and the terminology used by both the Plaintiff and Old Dayton View. For instance, the Plaintiff refers to Old Dayton View as a "co-developer" of the Hope VI Program. (Compl.¶ 8.) For its own part, in its Procurement Policy, Old Dayton View also refers to itself as the "Developer" and to Oberer Residential as the desired general contractor. This terminology suggests that Old Dayton View is DMHA's "partner" within the meaning of that term as defined at 24 C.F.R. § 941.604.

8. "Public housing agency" was defined in the United States Housing Act of 1937 as any "governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of low-income housing." 42 U.S.C. § 1437a(b)(6). The DMHA is such an entity under Ohio law. *See* Ohio Rev.Code § 3735.50.

into Part 941, subpart F, for purposes of regulating the award of contracts by local housing authority partners in mixed funding projects. In other words, Old Dayton View, be it characterized as the DMHA's "partner" in the Hope VI Program, or the DMHA's "subgrantee," or both, is required to comply with the regulations contained in Part 85.[9]

In paragraph 1 of its Prayer for Relief, in the Complaint, the Plaintiff seeks a declaration that 24 C.F.R. § 85.36(b)(3) is "mandatory law which must be adhered to in the procurement of awarding general and sub contracts in the Hope VI." According to the Plaintiff's Complaint and Memorandum in Opposition (Doc. # 8), by "desiring" to award the general contract for the Hope VI Program developments to Oberer Residential, an "affiliate" of Oberer DVA, one of Old Dayton View's principals, Old Dayton View will violate the conflict of interest prohibition contained in § 85.36(b)(3), irrespective of whether Oberer Residential submits the lowest bid, pursuant to the competitive bidding process. As an additional matter, by desiring, in the alternative, to hire Oberer Residential as its general contractor outside the competitive bidding process, pursuant to any waiver which it might seek and receive, the Plaintiff alleges that Old Dayton View will violate § 941.606(n)(1)(2)(B),

which requires that it use the competitive bidding process for procuring the general contractor. (Compl. ¶ 15 & 17.)

A third regulation invoked by the Plaintiff is found at 24 C.F.R. § 85.36(e) (see Compl. ¶ 18.), which requires all grantees and subgrantees to take "affirmative steps" to assure that minority firms, among other entities, be used when possible. "Affirmative steps" include placing minority firms on solicitation lists, soliciting said firms "whenever they are potential sources," dividing tasks into smaller tasks, where feasible, to encourage maximum participation of said firms, establishing delivery schedules agreeable to said firms, and requiring the prime contractor to do all of the same in awarding subcontracts. 24 C.F.R. § 85.36(e)(2). The Plaintiff alleges, in simple fashion, that the Defendants have not complied with this regulation, notwithstanding Old Dayton View's proposal that it will do just that. (Comp. ¶ 18; Procurement Policy at unnumbered pp. 5–6.)

As an initial matter, it requires pointing out that the invocation of 24 C.F.R. § 941.606(n)(1)(ii)(B) appears to be problematic. This is not the Plaintiff's fault, though, as Old Dayton View referred to the provision in its proposed Procurement Policy. Regardless, the regulation appears to be applicable only when the local

---

**9.** The Defendants erroneously argue that the strictures of Part 85 do not apply to Old Dayton View. (Doc. # 5 at 24.) For support, they cite 24 C.F.R. § 941.602(d)(2), and contend that "a developer procured by a public housing authority ... will not normally be subject to 24 C.F.R. Part 85." The Defendants have misinterpreted the provision they cite. Section 941.602(d) states that the requirements of Part 85, subject to two provisos, "are applicable to this subpart [i.e., subpart F, which includes § 941.606]." Paragraph (d)(2) of that section, cited by the Defendants, contains the second proviso, which they invoke in an attempt to escape the general rule of incorporation, but that

exception only applies to "owner entit[ies]," not to "partners." As noted above, "owner entities" are those entities with whom the local housing authority may contract for purposes of post-development ownership of the housing units, 24 C.F.R. § 941.604, and in that capacity alone they are normally not subject to Part 85. Id. § 941.602(d)(2). Under the facts as pled, the Court has no knowledge of whether Old Dayton View is also an owner entity, but regardless of that fact, it must be assumed, for the reasons noted at supra note 7, that it is DMHA's "partner," a fact which excludes it from the proviso upon which it relies.

housing authority's partner, or an owner entity, or "any other entity with an identity of interests with such parties," wants to hire *itself* as the general contractor. In this case, there is no allegation that Old Dayton View, as DMHA's partner in the Hope VI Program, is seeking to hire itself, only that it is seeking to hire Oberer Residential. Because Oberer Residential is not characterized by the Plaintiff as Old Dayton View's alter ego, but merely as an "affiliate" of Oberer DVA, which itself is a principal in Old Dayton View, there is no basis for assuming that the two entities are actually one and the same, such that § 941.606(n)(1)(ii)(B) would be relevant on the basis that Old Dayton View is seeking to hire itself. Furthermore, to the extent the Plaintiff intends to argue that Oberer Residential is an "entity with an identity of interests" with Old Dayton View, there is no allegation that it is in a position to award itself any contract at issue in this litigation. Because the language of the regulation does not appear to contemplate those situations where one entity is to award a contract to any party other than itself, it would appear that § 941.606(n)(1)(ii)(B) is irrelevant.[10]

Indeed, even assuming for the time being that 24 C.F.R. § 85.36(b)(3) and § 941.606(n)(1)(ii)(B) create the individual causes of action which the Plaintiff herein contends they do, they would be mutually exclusive. This is necessarily so, given the fact that the former is concerned with the award of a contract by a grantee, subgrantee or partner (by virtue of its incorporation into Part 941, subpart F) to *another* entity, the award of which would involve a conflict of interest, while the latter is concerned with the award of a contract by the partner to the partner itself, or by an "entity with an identity of interests" with the partner to that entity itself. As such, the Plaintiff cannot very well argue that Old Dayton View is poised to violate both regulations, as it would be impossible to award a contract to another and to one's self at the same time.

Assuming *arguendo* that Oberer Residential is not the same legal entity as Old Dayton View, as seems to be the case, given the facts as stated in the pleadings, the question presented by the Plaintiff is whether it (Plaintiff) has suffered an injury as a result of the latter having expressed its "desire" to award the general contract for each of the Hope VI Program housing developments to the former. Although the Court believes that the Plaintiff's Complaint is defective on a number of levels, questions of ripeness and standing stand out as significant concerns, and it is upon either or both of these grounds that the Court believes the Complaint should be dismissed. The Court will briefly examine the basic tenets of each doctrine, and it does so *sua sponte* because each bears on its subject matter jurisdiction.[11] Be that

---

**10.** It would seem to be more correct for Old Dayton View to seek a waiver from 24 C.F.R. § 85.36(d)(2), which sets forth the general rule that the competitive bidding process is to be used for awarding contracts, and which applies to Old Dayton View by virtue of its incorporation into Part 941, subpart F. 24 C.F.R. § 941.602(d).

**11.** Some of what the Defendants have stated with respect to their failure to exhaust argument is actually more relevant to a ripeness and/or standing analysis. Taken by itself, however, it seems to be at odds with their

alternative argument that the Plaintiff has failed to state a claim upon which relief can be granted. If the Plaintiff has failed to state a claim, then there would have been nothing to exhaust in the first instance. In other words, it would be impossible to evaluate whether the Plaintiff exhausted its administrative remedies if the Court could not first be certain of the existence of an underlying cause of action requiring exhaustion as a condition precedent to the legal action. Conversely, if it is true that the Plaintiff has failed to exhaust, then that implies, the question of exhaustion aside, that an underlying claim

as it may, the Court also believes that before it actually dismisses the Plaintiff's claim on this basis, the Plaintiff should have the opportunity to address the matter, and the Defendants should then have the opportunity to respond.

### A. Ripeness

■ [B]efore addressing the merits of any appeal, [the Court] must be convinced that the claim in question is ripe for review, even if neither party has raised this issue. "The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies[;] therefore[,] federal courts are not permitted to render advisory opinions." *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir.1987). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. This deficiency may be raised *sua sponte* if not raised by the parties." *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), *cert. denied*, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991) (citation omitted).

*Bigelow v. Michigan Dept. of Nat'l Res.*, 970 F.2d 154, 157 (6th Cir.1992). "The power of the federal judiciary is limited to those disputes 'which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.'" *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 526–27 (6th Cir.1998) (citing *Flast v. Cohen*, 392 U.S. 83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). The ripe-

ness doctrine exists to ensure that federal courts decide only existing, substantial controversies, not hypothetical questions or possibilities. *See Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir.2002) (citation omitted).

It is true that a declaratory judgment generally is sought before a completed injury-in-fact has occurred, and that "an individual does not have to await the consummation of threatened injury to obtain preventive relief, as long as it can demonstrate that the alleged injury is certainly impending." *Peoples Rights Organization*, 152 F.3d at 527 (citations omitted). "Nevertheless, when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief," *id.*, and 28 U.S.C. § 2201(a), the federal declaratory judgment remedy, expressly limits its reach to "actual cases."

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

"In order to determine whether a claim is ripe, [the] court examines (1) the likelihood that the harm alleged will ever come

has been stated. The Court offers no opinion herein on the merits of either of Defendants' arguments.

to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Id.* (citation omitted). "For pre-enforcement challenges, a case is ordinarily ripe for review only if the probability of the future event occurring is substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted).

It seems clear to the Court that the Plaintiff has not alleged facts demonstrating that an actual case or controversy presently exists, or is about to come into existence. It is clear on the face of the Complaint that none of the Defendants, Old Dayton View included, had taken any action with respect to the procurement of a general contractor as of the date of the filing of the Plaintiff's Complaint, and nothing has been filed with the Court in the intervening months tending to show that any such action has been taken in the interim. The first question to address, then, is whether, assuming their truth, the Plaintiff's pleadings indicate that it is likely that the alleged harms which the Plaintiff fears, i.e., 1) the award of the general contract to Oberer Residential, and 2) Old Dayton View's failure to take affirmative steps to assure minority representation, are likely to come to pass, such that the Defendants would be, arguably, in violation of 24 C.F.R. § 85.36(b)(3) & (e), respectively.

With respect to § 85.36(e), which requires the grantee, subgrantee, or partner (by virtue of the regulation's incorporation into Part 941, subpart F), to take affirmative steps to assure the hiring of minority firms, the answer appears to come readily, and it is "no." The Procurement Policy attached to the Plaintiff's Complaint, and incorporated by reference therein, expressly states that Old Dayton View intends to adhere to the very requirements as are set forth under § 85.36(e). (Compl. at Ex. 3, at unnumbered pp. 5–7.) While it is certainly possible that time will demonstrate that it did not so adhere to said requirements, at this point in time, a conclusion that such will likely be the case would be sheer speculation, and would not be based on any of the *factual* allegations contained in the Complaint.

As for whether it is appears likely on the face of the Complaint that Old Dayton View will violate § 85.36(b)(3), which prohibits employees, officers, or agents of a grantee, subgrantee or partner (by virtue of the regulation's incorporation into Part 941, subpart F) from awarding a contract where such action would create a conflict of interest, real or apparent, by awarding the general contract for the Hope VI Program developments to Oberer Residential, Oberer DVA's "affiliate," the answer again appears to be "no." *First,* the pleadings only indicate that Oberer Residential is an "affiliate" of Oberer DVA, which itself is a principal of Old Dayton View. Such a term, used in such a context, is vague and without discernible meaning. The Complaint does not indicate that any employee, officer or agent of Old Dayton View, or any member of such an individual's immediate family, or such an individual's partner, or an organization which employs, or is about to employ, any such individual or family member or partner thereof, has a financial interest in Oberer Residential. Because it does not seem likely on the face of the Complaint that any employee, officer or agent of Old Dayton View will give rise to a conflict of interest by awarding a Hope VI Program general contract to an entity it should not, it does not appear that a case or controversy of the type which the Plaintiff claims exists does, in fact, exist, or will, in all likelihood, exist in the near future.

*Second,* even if the Court, albeit without any reasonable basis, were to construe the

Plaintiff's use of the term "affiliate" as implying that Oberer Residential is an entity in which the employee, officer or agent of Old Dayton View who "desires" to award the general contract to said entity has a financial interest, or an entity in which an immediate family member, partner, or organization who employs or is about to employ an immediate family member or partner, of said employee, officer or agent of Old Dayton View, has a financial interest, it would still appear impossible to find, reasonably speaking, that it is likely that such will come to pass. This is because Old Dayton View has not indicated anything more than a "desire" to hire Oberer Residential. Actions, not mere desires to act, give rise to cases or controversies, as do inactions where actions are required. Even in the declaratory judgment and injunction contexts, the federal courts have made it clear that the "threat of harm" must appear real and imminent. That a party has expressed a "desire" to take a certain action at some unknown time in the future is simply not enough to invoke federal court jurisdiction. To have it otherwise would be to invite litigation on a whim, without giving the other side any chance to change its mind, or to explain its position or even provide accommodation to the party which feels aggrieved.

*Third,* even if Old Dayton View had expressed more than a mere "desire" to hire Oberer Residential as its general contractor for the Hope VI Program developments, it has further stated that it only intends to do so "[u]pon completion of drawings and specifications." (Compl. at Ex. 3, at unnumbered p. 2.) The Plaintiff's pleadings are devoid of any mention of a time frame, actual or anticipated, for when such drawings and specifications will be completed. Indeed, even in its Motion for Preliminary Injunction, the Plaintiff neglects to mention how imminent Old Dayton View's "desired" action of hiring Oberer Residential is, despite the fact that one of the factors a court must consider in ruling on such a motion is whether the party seeking relief will suffer irreparable harm without the preliminary injunction. *See Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994). It is impossible for a party to address this factor satisfactorily without addressing the temporal component inherent therein. Again, given that the Court has no sense for how much time might pass before Old Dayton View actually gets around to awarding the general contracts at issue, it is reluctant to rule on the legality of an outcome which at this point in time can hardly be described as "likely" or of "sufficient immediacy and reality."

*Fourth,* Secretary Martinez has the authority to waive any regulation for good cause shown. *See* 24 C.F.R. § 5.110. While the Court has expressed its doubt as to whether Old Dayton View's avowal that it "may" request a waiver from 24 C.F.R. § 941.606(n)(1)(ii)(B), so that it can hire Oberer Residential without regard to the requirement that it procure a general contractor by competitive bidding, is well taken, given the fact that said regulation does not appear to be applicable in this circumstance, it is certainly conceivable that this very litigation may prompt it to seek a waiver from § 85.36(b)(3).[12] The Court just cannot know what set of circumstances will prevail, but until a case or

---

12. Indeed, even if the Court were to regard Old Dayton View and Oberer Residential as the same legal entity, such that the former would have a reason to seek the waiver of 24 C.F.R. § 941.606(n)(1)(ii)(B), in order to hire Oberer, because the right to seek such a waiver exists, and because no such request has yet been ruled upon by Secretary Martinez, as far as the Court is aware, the Court would again conclude that the claim is not ripe for consideration.

controversy appears "distinct and palpable," *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), it cannot assume jurisdiction of the Complaint.

For the aforementioned reasons, the Court has serious doubts about whether the Plaintiff has presented a body of facts ripe for the Court's review.

### B. *Standing*

■ The standing doctrine also stems from the limited nature of the Court's subject matter jurisdiction, as set forth in Article III, and requires the plaintiff to show that he has suffered, or at least is likely to suffer, an injury in fact, which is traceable to the challenged action of the defendant, and which can likely be redressed by the relief sought. *See Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville,* 274 F.3d 377, 389 (6th Cir.2001), *cert. denied,* 535 U.S. 1073, 122 S.Ct. 1952, 152 L.Ed.2d 855 (2002). These three factors constitute an "irreducible minimum" constitutional requirement for standing. *See Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir.1999). A court's inquiry into the existence of standing will often overlap with the ripeness inquiry. *See Kardules v. City of Columbus,* 95 F.3d 1335, 1343 (6th Cir.1996). "If no injury has occurred, the plaintiff could be denied standing or the case could be dismissed as not ripe. The question whether an alleged injury is sufficient to meet the constitutional 'case or controversy' requirement is at the heart of both doctrines." *Id.*

The concerns raised above are also relevant to the question of whether the Plaintiff has suffered an injury in fact or is likely to suffer such in the very near future. The Plaintiff does not allege in its Complaint that it or any of its members have actually submitted bids for any of the general contracts, or that any such bids have been denied in an allegedly illegal manner. In fact, the Plaintiff confirms in its Memorandum in Opposition that it "has not bid to become the general contractor." (Doc. # 8 at 5.) Apparently, this is so because the "DMHA has expressed unequivocally its intent to seek a non-competitive process for the selection of a general contractor from HUD" (*id.* at 6), such that to entertain hopes of having its bid selected would be fruitless. The Court disagrees. *First,* as its own Complaint depicts, the DMHA has not expressed an intent to do anything; Old Dayton View has. *Second,* to the extent the Plaintiff intended to argue that Old Dayton View has expressed unequivocally its intent to name Oberer Residential, for the reasons already stated, nothing of the like can be gleaned from the phrase "desires to hire," and, in any event, the Complaint contains no allegations suggesting that such a desire will be acted upon any time in the near future.

For the aforementioned reasons, the Court has serious doubts about whether the Plaintiff has suffered an injury, such that it has standing to bring its action.

### C. *Other Claims*

As a final matter, it should be noted that it is not apparent, upon the face of the Plaintiff's Complaint, how the Defendants have allegedly violated, or stand ready to violate, 42 U.S.C. § 1981, 1982, 1983 and 1985. Indeed, of these claims, only that allegedly arising under § 1983 is even mentioned by the Plaintiff in its Memorandum in Opposition, and even then, all that the Plaintiff states, without the assistance of supporting case law, is that it has stated a claim thereunder by virtue of the Defendants' failure to honor the terms of the HUD regulations. It is clear, then, that the entirety of the Plaintiff's cause of action hinges on the viability of its claim that the Defendants intend to violate the HUD

regulations. (Doc. # 8 at 9–10.) For that reason, no separate analysis of the civil rights laws is necessary at this time.

## IV. *Conclusion*

For the reasons stated herein, the Court has serious doubts about whether the Plaintiff has pled a body of facts which is ripe for consideration in this Court, and whether it has standing to bring such a suit. As these matters go to the Court's subject matter jurisdiction, and because the parties have not had the opportunity to address the issues themselves, the Court shall give them time to do so. Accordingly, the Plaintiff is hereby directed to file, within 20 days from date, a memorandum of law, showing cause as to why its Complaint should not be dismissed on principles of ripeness and/or standing. The Defendants may then respond pursuant to S.D. Ohio Civ. R. 7.2(a)(2). Because the Court's concerns pertain to its jurisdiction, the parties may, indeed should, adduce any facts which would tend to ameliorate said concerns. If it then becomes apparent, on the basis of those facts, that ripeness and standing are not issues with which the Court need be concerned, the Plaintiff should move to amend her Complaint, to state those facts.

In the meantime, the Plaintiff's Motion for a Preliminary Injunction (Doc. # 2) and the Defendants' Joint Motion to Dismiss (Doc. # 5) are OVERRULED. Said rulings are without prejudice, and the Motions may be renewed should this Court not dismiss the suit upon its review of the parties' briefs on the questions of ripeness and standing.