**CARETOLIVE, Plaintiff,**

v.

**Andrew von ESCHENBACH, et al., Defendants.**

**No. 2:07–cv–729.**

United States District Court, S.D. Ohio, Eastern Division.

Dec. 4, 2007.

---

See also 525 F.Supp.2d 938, 2007 WL 4190722.

Kerry M. Donahue, Bellinger & Donahue, Dublin, OH, for Plaintiff.

Mark Thomas D'Alessandro, John J. Stark, United States Attorney's Office, Columbus, OH, Andrew Clark, Daniel K. Crane–Hirsch, Office of Consumer Litigation, U.S. Department of Justice, Washington, DC, for Defendants.

## OPINION AND ORDER

GREGORY L. FROST, District Judge.

This action involves a biologics license application ("BLA") that was submitted to

the Food and Drug Administration ("FDA") for Provenge, a biological product which is intended to treat a particular type of metastatic prostate cancer and is manufactured by Dendreon Corporation. Plaintiff CareToLive challenges the decision of the FDA "not to approve Provenge for immediate use and instead [to] issue[ ] a Complete Response Letter requesting more data." (Doc. # 22.)

This matter is before the Court on Plaintiff's Motion for Order that the FDA Comply with Freedom of Information Act ("Plaintiff's Motion for an Order to Comply") (Doc. # 29), the Motion to Dismiss Defendants Richard Pazdur, M.D. and Howard Scher, M.D. ("Defendants' Motion to Dismiss") (Doc. # 37), Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. # 48), and Plaintiff's Motion to Strike Defendants' Reply to Plaintiff's Memorandum Contra Individual Defendant's Motion to Dismiss ("Plaintiff's Motion to Strike") (Doc. # 60). For the reasons set forth below, the Court **DENIES** all three of Plaintiff's motions and **GRANTS** Defendants' motion.

## I. BACKGROUND

### A. The Parties

Plaintiff characterizes itself as an association of "cancer patients, patient families, doctors, investors, and advocates." (Doc. # 22 at 2.) Plaintiff brought this action against the Commissioner of the FDA Andrew von Eschenbach, M.D., and the Secretary of the United States Department of Health and Human Services Michael Leavitt, in their official capacities and against Richard Pazdur, M.D. and Howard Scher, M.D., in both their official and individual capacities. *Id.* ¶¶ 4, 5, 6, 7. Pazdur is the Director of the Office of Oncologic Drug Products in the FDA's Center for Drug Evaluation and Research. *Id.* ¶ 6. Scher is a special government employee who served on the FDA Advisory Committee that considered the Provenge BLA. *Id.* ¶ 7.

Defendants filed a separate motion to dismiss the claims against von Eschenbach, Leavitt, Pazdur and Scher in their official capacities. (Doc. # 38.) This Court granted Defendants' motion by separate Opinion and Order.[1] (Doc. # 64.)

### B. Statutory and Regulatory Scheme

Biological products are defined under the Public Health Service Act ("PHSA") as any "virus, therapeutic serum, toxin, antitoxin, vaccine ... or analogous product ... applicable to the prevention, treatment, or cure of a disease or condition of human beings." 42 U.S.C. § 262(i). Biological products can also be drugs, and are generally subject to the same statutory and regulatory requirements that apply to drugs. *See* 42 U.S.C. § 262(j) (the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 321, applies to biological products subject to regulation under the PHSA, 42 U.S.C. § 262).

### 1. Biological Product Approval Process

For unapproved biological products, the product's sponsor seeks FDA approval by submitting a BLA pursuant to the PHSA. 42 U.S.C. § 262(a). The FDA will approve

---

1. On December 3, 2007, Plaintiff appealed this decision. (Doc. # 68.) This Court, however, has not been divested of jurisdiction to decide the motion to dismiss of Pazdur and Scher. *See* Fed.R.Civ.P. 54(b) (any order "which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims or parties"); *Bragg v. Lack,* 815 F.2d 701, 1987 WL 35938 *1 (6th Cir. March 16, 1987) ("notice of appeal from a nonappealable order does not divest the district court of jurisdiction") (citing *Cochran v. Birkel,* 651 F.2d 1219, 1222 (6th Cir.1981)).

a BLA for an unapproved biological product if the BLA demonstrates that the product is safe, pure, and potent, *id.* § 262(a)(2)(C)(i)(I), and that the facility in which the product is manufactured "meets standards designed to assure that the biological product continues to be safe, pure, and potent," *id.* § 262(a)(2)(C)(i)(II).

Generally, when the sponsor of a biological product has completed the clinical trial process, it can submit a BLA in accordance with 21 C.F.R. § 601.2(a). The required documentation in a BLA provides information for the FDA evaluation of the biological product, including the results of clinical trials, the composition of the drug, manufacturing information, and sample labeling. *Id.*

### 2. FDA Responses to a BLA

In response to a BLA, the FDA may refuse to file it if it is incomplete. *See* FDA, *"Refusal to File Procedure for Biologics License Applications,"* SOPP 8404, available at *http://www.fda.* gov/cber/regsopp/8404.htm. Under certain circumstances, the FDA will approve a BLA, 21 C.F.R. § 601.4(a), or deny it and provide the applicant the opportunity for a hearing, *id.* § 601.4(b). Finally, if there are deficiencies in the BLA, the FDA may send a Complete Response Letter declining to approve the BLA as it was presented and requesting additional information from the sponsor. *Applications for Approval to Market a New Drug,* 69 Fed. Reg. 43351, 43352 (July 20, 2004) (codified at 21 C.F.R. §§ 314.110, 314.120).

### C. Statement of Facts

Provenge is a biological product intended to treat a particular type of metastatic prostate cancer. (Doc. # 22 ¶ 15.) Provenge uses a patient's own cells to prepare a final product designed for infusion back into the patient's bloodstream to activate his or her immune system against the cancer cells. *Id.* ¶¶ 14, 16. Provenge is referred to as an active cellular immunotherapy, designed to elicit a patient's specific immune response to a target antigen expressed in prostate cancer tissue, *i.e.,* to train a patient's immune system to recognize cancer cells and to fight them. *Id.* ¶¶ 14–16, 19. Because it is designed to act in this manner, Provenge is a vaccine and thus a "biological product" subject to FDA regulation under the PHSA. 42 U.S.C. § 262(i).

Dendreon Corporation has been studying Provenge's safety and effectiveness in clinical trials pursuant to an investigational new drug application it submitted to the FDA in 1996. *See* Transcript of March 29, 2007 Cellular, Tissue, and Gene Therapies Advisory Committee Meeting at 20; (Doc. # 23, Ex. C.) Dendreon submitted its BLA for Provenge in late 2006, and the FDA considered it to be filed in January 2007. (Doc. # 22 ¶ 27.) Because Provenge is an immunotherapy vaccine, regulatory responsibility for reviewing and, ultimately, approving or denying approval of the BLA rests with the Office of Cellular, Tissue, and Gene Therapies in the FDA Center for Biologics Research and Evaluation. *Id.* ¶ 29; 68 Fed.Reg. 38067, 38068 (June 26, 2003).

In the Amended Complaint, Plaintiff claims that Pazdur intentionally violated "Federal Regulations and U.S. Law by improperly controlling the makeup of the FDA [Office of Cellular, Tissue, and Gene Therapies] Advisory Committee, and applying improper pressure on Committee members" in an effort to deny due process for the BLA for Provenge; by purposely placing on the Advisory Committee two oncologists who had conflicts of interest and who Pazdur was sure would be opposed to the approval of Provenge; by, prior to the vote, changing the question

posed to the Advisory Committee to get it to recommend against approval of Provenge; by "recruit[ing] and illegally us[ing] FDA employees" at and after the Advisory Committee meeting to assist him in "wrecking" the Provenge BLA by requesting anti-Provenge letters and "design[ing] a method for 'leaking' them to the press." (Doc. # 22 ¶¶ 6, 50, 62, 63, 67, 70, 71, 72, 73, 77, 79.)

Further, Plaintiff alleges that Scher "fail[ed] to disclose conflicts of interest that would have placed the FDA on notice that his own personal interests provided him additional reasons" to be opposed to the immediate approval of the Provenge BLA; wrote a letter attacking Provenge that contained false information and that was later "leaked to the press"; and failed to exercise care in the responsibility he undertook to aid patients. *Id.* ¶¶ 7, 60, 70, 72, 77, 79.

On May 8, 2007, the Office of Cellular, Tissue, and Gene Therapies in the FDA Center for Biologics Research and Evaluation issued a Complete Response Letter to Dendreon, Provenge's sponsor, declining to approve the BLA in its current form because of various deficiencies. *See* Dendreon Corp., *"Dendreon Receives Complete Response Letter from FDA for Provenge Biologics License Application,"* May 9, 2007, available at *http://* investor. dendreon. com/ReleaseDetail.cfm?ReleaseID=241649 & Header=News (*"Dendreon Receives Complete Response Letter"*). The FDA requested that Dendreon submit additional information with respect to the chemistry, manufacturing, and controls section of the BLA so that it could be determined if the facility in which the product would be manufactured "meets standards designed to assure that the biological product continues to be safe, pure, and potent." 42 U.S.C. § 262(a)(2)(C)(i)(II). The FDA also re-

quested that Dendreon submit additional clinical data in support of its effectiveness claim. *Dendreon Receives Complete Response Letter.* Dendreon has since met with the FDA to discuss the additional data required to support licensure and indicated that it intends to proceed with its new Phase 3 study designed to measure survival and to submit such data to the FDA when it becomes available. *See* Dendreon Corp., *"Dendreon Announces FDA Confirms Data Required for Provenge Licensure,"* May 31, 2007, available at *http://* investor.dendreon.com/ReleaseDetail.cfm?ReleaseID=246500 & Header=News.

On July 26, 2007, Plaintiff submitted a citizen petition to the FDA. (Doc. # 2 Ex. B.) The FDA's Docket Branch received the citizen petition on July 27, 2007 and assigned it docket number 2007P–0297. *Id.* Under FDA regulations, a citizen petition is the mechanism for formally asking the agency to take a particular action, and is a prerequisite to filing suit on the subject. *See* 21 C.F.R. §§ 10.25, 10.30, 10.45. In its citizen petition, Plaintiff urges the Commissioner of the FDA to "reverse [the FDA's] decision to deny immediate approval to Provenge." (Doc. # 2 Ex. B.) FDA regulations require the Commissioner, within 180 days of receipt of a citizen petition, to either approve the petition, deny the petition, or, if more time is required, issue a tentative response. 21 C.F.R. § 10.30(e)(2). On July 30, 2007, the FDA acknowledged receipt of the citizen petition, but otherwise has not yet responded. *See* 7/30/07 Letter., Jaffe to Kearney, available at *http://www.fda.gov/ohrms/dockets/dockets/07p0297/* 07p–0297–ack0001–vol1.pdf.

On July 30, 2007, Plaintiff filed this action and on September 5, 2007, Plaintiff filed an amended complaint (Doc. # 22). On September 13, 2007, with the agree-

ment of the parties, this Court ordered a stay of discovery pending decision on the pending motions to dismiss. (Doc. # 27.)

Notwithstanding the stay of discovery, on September 28, 2007, Plaintiff filed a discovery motion, *i.e.*, Plaintiff's Motion for an Order to Comply (Doc. # 29) and on October 19, 2007, Defendants opposed that motion (Doc. # 41). On October 27, 2007, Plaintiff filed a document wherein it combined its reply in support of Plaintiff's Motion for an Order to Comply with a request for leave to file a second amended complaint, *i.e.*, Plaintiff's Motion for Leave to File a Second Amended Complaint. (Doc. # 48.) On November 19, 2007, Defendants filed a memorandum in opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint. (Doc. # 63.)

On October 5, 2007, Defendants Pazdur and Scher filed their motion to dismiss (Doc. # 37) and on October 24, 2007, Plaintiff filed its memorandum in opposition to that motion (Doc. # 46). Defendants filed their reply in support of their motion to dismiss on October 31, 2007. (Doc. # 51.)

On November 15, 2007, Plaintiff filed Plaintiff's Motion to Strike. (Doc. # 60.) On that same day, Defendants filed their memorandum in opposition to the motion to strike (Doc. # 61) and Plaintiff filed its reply in support of its motion (Doc. # 62).

## II. DEFENDANTS' MOTION

Plaintiff asserts claims against Pazdur and Scher in their individual capacities for alleged violations of federal constitutional due process and equal protection and for alleged violations of 42 U.S.C. § 1985 and § 1986. Plaintiff also asserts state law claims for wrongful death and a cause of action under the "Good Samaritan" doctrine.

In their motion to dismiss, Pazdur and Scher argue that they are entitled to dis-missal of the federal personal capacity claims against them based on the affirmative defense of qualified immunity and on the state law claims based on this Court's lack of subject matter jurisdiction to hear them. This Court agrees.

### A. Standards: Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure

Defendants move for dismissal for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction to hear Plaintiff's state law tort claims. Defendants make a facial attack on the subject matter jurisdiction of this Court. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). *See also Nat'l Assoc. of Minority Contractors v. Martinez*, 248 F.Supp.2d 679, 681 (S.D.Ohio 2002) (applying standard). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.

Rule 12(b)(6) requires an assessment of whether Plaintiffs have set forth claims upon which this Court may grant relief. For the purpose of the analysis under Rule 12(b)(6), this Court must construe the amended complaint in favor of Plaintiffs, accept the factual allegations contained in the amended complaint as true, and determine whether Plaintiffs' allegations plausibly suggest viable claims. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458, 2007 WL 3010426, at *12 (6th Cir. Oct.17, 2007); *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir.2007); *cf. Goad v. Mitchell*, 297 F.3d 497, 500 (6th Cir.2002). In other words, "a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or

if on the face of the complaint there is an insurmountable bar to relief." *The Limited, Inc. v. PDQ Transit, Inc.,* 160 F.Supp.2d 842, 843 (S.D.Ohio 2001) (citing *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir.1978)). *See also Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987) ("Before filing a formal affirmative defense in his answer, the defendant could properly challenge the sufficiency of the complaint under F.R.C.P. 12(b)(6) on the basis that he was entitled to a qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person should have known at the time.").

## B. Qualified Immunity

 Qualified immunity protects government officials performing discretionary functions from suit for damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiff contends that Pazdur and Scher are not entitled to qualified immunity. First, Plaintiff argues that,

> The question of qualified immunity is just that, it is only qualified. Whether the individuals even have qualified immunity is only relevant to activities taken within their scope of employment. *See Miller v. City of Anderson,* 777 N.E.2d 1100, 1104–05 (Ind.Ct.App.2002). *Miller,* 777 N.E.2d at 1103 (*sic*), *Flynn v. Mills,* 361 F.Supp.2d 866, *877 (S.D.Ind.2005). The allegations taken in a light most favorable to Plaintiffs at the least indicate that the issue of whether the actions taken by Scher and Pazdur were within the scope of their employment requires a factual determination by the Court.

Doc. # 46 at 13. Plaintiff's contention is inaccurate. That is, whether Pazdur and Scher are "entitled to qualified immunity in this case is a question of law for the district court." *Barrett,* 388 F.3d at 970. Moreover, the Indiana cases upon which Plaintiff relies simply have nothing to do with a qualified immunity analysis and, instead, relate to the Indiana Tort Claims Act. *Miller,* 777 N.E.2d at 1103 ("While the issue of an actor's immunity from liability under the Indiana Tort Claims Act may, at times, require factual development, the issue remains a question of law for the courts."); *Flynn,* 361 F.Supp.2d at 877 ("Plaintiffs' remaining negligence-based claims fall squarely with the immunity granted by the [Indiana Tort Claims Act].").

 Second, Plaintiff contends:

> Qualified immunity also only covers negligent acts and not intentional acts committed with constitutional malice as alleged by Plaintiffs

· · · · ·

> Further, while an agency's employees generally enjoy qualified immunity to the same extent as does the agency itself, employees do not have such protection where their actions constitute "willful misconduct." "While 'willful misconduct' generally refers to intentional torts, it can also mean ... misconduct 'whereby the actor ... was aware that [a result] was substantially certain to follow, so that desire [that a particular outcome results] can be implied.'" *DiSalvio [v. Lower Merion High Sch. Dist.],* 158 F.Supp.2d [553,] 564 (citing *Owens v. City of Phila.,* 6 F.Supp.2d 373, 394–95 (E.D.Pa.1998)). Based on the allegations of the Complaint, Defendants have not carried their burden of showing that they enjoy

qualified immunity for their actions, or failures to act.

. . . . .

Defendants bear the burden of establishing that they enjoy qualified immunity. *See Ryan v. Burlington County,* 860 F.2d 1199, 1204 n. 9 (3d Cir.1988). Doc. # 46 at 14, 15. Plaintiff's contentions are misstatements of the law. An individual's subjective intention is of no consequence in a qualified immunity analysis. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court explained that the qualified immunity analysis should not consider whether the government official "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Id.* (overruling in part *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)). Further, the Pennsylvania case cited by Plaintiff to support its argument interprets a Pennsylvania statute and has nothing to do with qualified immunity. *See DiSalvio,* 158 F.Supp.2d at 564 (interpreting "willful misconduct" as used in 42 Pa. Cons.Stat. § 8850).

■ Moreover, Plaintiff's reliance on the law from another circuit regarding the burden of demonstrating entitlement to qualified immunity is misplaced, since the law in this circuit is well-settled: "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir.2006). *See also Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992) (once qualified immunity is raised, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirma-

tive duty to refrain from such conduct): *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991) (the plaintiff bears the ultimate burden of proof to show that the defendant is not entitled to qualified immunity).

Finally, Plaintiff argues that:

It is unnecessary for the Court to consider the constitutional issue at this point in the proceedings and the Court should not decide constitutional issues unless it is absolutely necessary for a determination at each stage of the proceedings.

(Doc. # 46 at 15–17.) This contention is, at its core, an accurate statement of the law, *i.e.,* if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter. *See e.g., Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.") (citation omitted). However, the application of this doctrine is not obvious in the instant action. Apparently, Plaintiff contends that this Court need not address the constitutional issue before it and instead should address some other issue that would be dispositive of Defendants' Motion to Dismiss. Notwithstanding this contention, Plaintiff fails to even hint at what the other issue of law or statutory construction may be and, indeed, argues *only* with regard to how this Court should decide the constitutional issues. (Doc. # 46 at 17–30.)

Plaintiff's arguments related to qualified immunity are reflective of Plaintiff's memorandum in opposition to Defendants' Motion to Dismiss, which is filled with the same type of inaccurate and misleading citation to authority. Moreover, out of the

thirty page document, a full nineteen pages are completely devoid of citations to any legal authority or any evidentiary source.

■■■■ In their motion to dismiss, Defendants correctly set forth the law related to qualified immunity, which, "is an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727). It is well settled that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Behrens v. Pelletier*, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

In *Saucier v. Katz*, the Supreme Court instructed federal courts to use a two-step analysis to assess the applicability of the qualified immunity affirmative defense.[2] *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. The "initial inquiry" must be whether the officer's alleged conduct violated a constitutional right. *Id.* "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the plaintiff shows that the defendant violated a constitutional right, he or she must then demonstrate that this right was clearly established at the time of the infringement. *Id.* A right is clearly established if:

> The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir.2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (citation omitted).

Plaintiff's federal claims against Pazdur and Scher in their individual capacities are based on alleged violations of substantive due process, procedural due process, and equal protection. In their motion to dis-

---

**2.** The United States Court of Appeals for the Sixth Circuit occasionally employs a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Compare *Dunigan v. Noble*, 390 F.3d 486, 491 n. 6 (6th Cir.2004) (two-step approach), with *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (three-step approach). The three-step approach adds a third prong to the analysis: "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky, supra* (citation omitted). In cases subsequent to *Saucier* the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g., Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) and *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir.2005). In this action, however, even if the tripartite method were employed, this Court would not reach the third prong based on its conclusion that the first two prongs are not met.

miss, Defendants' argue that Plaintiff has failed to identify a cognizable constitutional violation, and, even if it had identified a recognized right, that right was not clearly established at the time the actions complained of occurred. Defendants' arguments are well-taken.

### 1. Substantive Due Process

 The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that the protections of the Amendment "guarantee[ ] more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). "The Clause ... provides heightened protection against government interference with certain fundamental rights and liberty interests," *id.* at 720, 117 S.Ct. 2258 (citing *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)), including "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion," *Glucksberg*, 521 U.S. at 720, 117 S.Ct. 2258 (citations omitted).

As such rights are not set forth in the language of the Constitution, the lower courts have been cautioned against expanding the substantive rights protected by the Due Process Clause "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26, 106 S.Ct. 507, 88 L.Ed.2d 523

(1985)). There is an additional and substantial concern that this Court must also consider: "By extending constitutional protection to an asserted right or liberty interest, [the courts], to a great extent, place the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. 2258. Thus, the Supreme Court has directed courts to "exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the [courts' members]." *Id.* (quotation marks and citations omitted).

*Glucksberg*, described the Supreme Court's "established method of substantive-due-process analysis" as having "two primary features."

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.

*Id.* at 720–21, 117 S.Ct. 2258 (quotation marks and citations omitted).

In the instant action, Plaintiff makes many attempts to set forth a "careful description" of the asserted fundamental liberty interest, including:

> Plaintiffs' herein complaint is about the lack of procedural and substantial (*sic*) due process afforded them due to the actions and unlawful conduct of the FDA, Scher and Pazdur. The more narrowly defined constitutional issue herein is more a question of *right to survive* or, specifically; *whether there is a funda-*

*mental right of late stage cancer patients in consultation with their doctors, who have no reasonable alternative treatments available and when their only alternative to treatment is death without hope do that (sic) have a right to access to a treatment that has been substantially proven to be effective and which has been demonstrated to be safe or at least have a right to proper procedural due process if it is to be denied by action taken by the FDA.*

(Doc. # 46 at 17, emphasis in original.) Plaintiff also argues that "the preservation of a man's health," a "right of control over one's body" and "personal security" including "a person's legal and uninterrupted enjoyment of his life, his limbs, his body, [and] his health" adequately describe the substantive due process right at issue in this action.

The Court concludes that Plaintiff's descriptions of the right it seeks to protect are all too broad to comply with *Glucksberg.* In the leading case on the "right to die," the Supreme Court carefully described the asserted right as a "constitutionally protected right to refuse lifesaving hydration and nutrition." *Cruzan v. Director, Mo. Dep't of Health,* 497 U.S. 261, 279, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). Where a state statute criminalized helping other persons commit suicide, the Supreme Court rejected attempts to characterize the asserted liberty interest at stake broadly, as, for example, "a liberty interest in determining the time and manner of one's death," a "right to die," a "liberty to choose how to die," a right to "control of one's final days," the "right to choose a humane, dignified death," and "the liberty to shape death," and it instead insisted that the asserted right must be carefully—and specifically—described, as a "right to commit suicide which itself includes a right to assistance in doing so."

*Glucksberg,* 521 U.S. at 722, 723, 117 S.Ct. 2258.

Further, this Court has serious doubt about whether the Plaintiff's description of its proposed constitutional right could ever pass constitutional muster since the claimed right depends on a regulatory determination that the drug or biological product "has been substantially proven to be effective and which has been demonstrated to be safe," prompting the obvious question: How can a constitutional right be defined by an administrative regulation that is subject to change? *See Abigail Alliance v. von Eschenbach,* 495 F.3d 695, 703 n. 6 (D.C.Cir.2007) (*en banc*) (posing similar question in analogous circumstances).

■ Nonetheless, even assuming *arguendo* that Plaintiff's description of the asserted right would satisfy *Glucksberg's* "careful description" requirement, Plaintiff's substantive due process claim must still fail because Plaintiff cannot demonstrate that the asserted liberty interest is fundamental. To show that an asserted right is fundamental for substantive due process purposes, a plaintiff must show that the interest is, "objectively, deeply rooted in this Nation's history and tradition" and that it is "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Glucksberg,* 521 U.S. at 720–21, 117 S.Ct. 2258 (internal quotation marks and citation omitted). In the Amended Complaint, Plaintiff alleges that the right it seeks to protect is "so rooted in the traditions and conscience of our people so as to be ranked as fundamental, and as immunities implicit in the concept of ordered liberty" (Doc. # 22 at 28), and that the common law doctrines of necessity, the tort of intentional interference with rescue, and the right to self defense establishes the right Plaintiff seeks to protect, *id.* 28–

These allegations, however, fall far short of Plaintiff's burden. Indeed, to survive a motion to dismiss for failure to state a claim upon which relief can be granted "[a] Plaintiff's obligation to provide 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* —— U.S. ——, —— ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007).

Further, this Court finds it difficult to imagine how a right inextricably entangled with the details of shifting administrative regulations could be "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Glucksberg,* 521 U.S. at 721, 117 S.Ct. 2258 (quotation marks and citations omitted). *See also Abigail Alliance v. Von Eschenbach,* 495 F.3d at 703 n. 6 (concluding same).

Finally, the United States Court of Appeals for the District of Columbia, *en banc,* opined that this nation's history and tradition did not establish a fundamental substantive due process right of access to experimental drugs for the terminally ill. *Id.* at 707–710. Also, the Abigail Alliance court concluded that neither the common law doctrine of necessity, the tort of intentional interference with rescue, nor the right to self defense established a self-preservation right giving the terminally ill access to experimental drugs. *Id.* This Court finds the D.C. Circuit's analysis sound, its conclusions persuasive, and equally applicable to the issue before this Court. *See id.*

Plaintiff has failed to set forth a liberty interest that is entitled to constitutional due process protection. Thus, Pazdur and Scher are entitled to qualified immunity on Plaintiff's substantive due process claim. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's substantive due process claim.

### 2. Procedural due process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As this Court explained *supra,* there is no liberty interest at issue here. Further, Plaintiff makes no argument that there is somehow a property interest in the right it seeks to protect. *See id.* ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

Even if Plaintiff's right to Provenge, under the circumstances presented in this action, were protected by due process, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Eldridge,* 424 U.S. at 333, 96 S.Ct. 893. Here, Plaintiff contends:

> Its (*sic*) not meaningful if the public A[dvisory] C[ommittee] hearing is merely a sham and the "real meeting" occurs behind closed doors in ignorance that this is The (*sic*) United States of America where operating in secrecy in a non democratic manner is frowned upon.

(Doc. # 46 at 17.) Plaintiff's argument, however, misses the mark. That is, the Advisory Committee hearing is not meant to be a meaningful place nor to be a meaningful time for individuals to be heard

since the Committee meets *before* a decision is made related to the availability of a biological product or new drug. It is the Commissioner's decision that is the final agency action that is reviewable and is entitled to procedural due process. *See* 21 C.F.R. § 10.45(d) ("Unless otherwise provided, the Commissioner's final decision constitutes final agency action (reviewable in the courts under 5 U.S.C. 701 *et seq.* and, where appropriate, 28 U.S.C. 2201)....").

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's procedural due process claim.

### 3. Equal protection

 The Equal Protection Clause of the Fourteenth Amendment dictates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause prohibits discrimination by government which either "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).

Plaintiff alleges that, "men, ... elderly men, and African Americans are disproportionately affected by" androgen-independent prostate cancer ("AIPC") and, that these "AIPC men are being treated differently and not equally as many other groups of patients, such as AIDS patients." (Doc. # 22 at 29.) Plaintiff's allegations, however, fail to state a cognizable constitutional violation.

 As this Court concluded *supra*, plaintiff has failed to establish the existence of any fundamental right at issue here. Further, to demonstrate that the

discrimination against either a suspect class or an individual is a violation of the Constitution, a plaintiff must show discriminatory purpose. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 271–72, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). "Discriminatory purpose ... implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). It is not enough under the Constitution to show that a particular law primarily affects one group. "[U]neven effects upon particular groups within a class are ordinarily of no constitutional concern." *Feeney,* 442 U.S. at 272, 99 S.Ct. 2282; *see also Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("[A] law, neutral on its face and serving ends otherwise within the power of government to pursue, is not invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."). Thus, Plaintiff's belief that the FDA treats AIPC men "differently and not equally as many other groups of patients, such as AIDS patients," does not establish an equal protection claim subject to heightened scrutiny without an allegation of discriminatory purpose.

 Because Plaintiff has failed to allege facts that would subject its equal protection claims to heightened scrutiny, any alleged government classification is reviewed under a rational basis standard, which is "a relatively relaxed standard," under which the government classification is "presumed to be valid." *Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The only supposed "classification" involved here is that the FDA evaluates each drug

and biologic application individually. It is rational for the FDA to treat each biologic and drug approval application on its own merits, evaluate the data in each application, and approve the application only when the approval standards are satisfied. *See Abigail Alliance*, 495 F.3d at 713 ("[P]rior to distribution of a drug outside of controlled studies, the government has a rational basis for ensuring that there is a scientifically and medically acceptable level of knowledge about the risks and benefits of such a drug.")

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's equal protection claim.

### 2. The Rights Allegedly Violated Were Not Clearly Defined

Assuming *arguendo* that Plaintiff had established that Defendants violated any constitutional rights, Defendants would still be entitled to qualified immunity because Plaintiff has failed to meet its burden of showing that the rights were clearly established. To establish that the rights upon which it sued were clearly established, Plaintiff states:

> The Defendants [Pazdur and Scher] are both accomplished medical school graduates. They both have suggested through their counsel that they did not have fair warning that their conduct would not violate anyone's rights. Theirs is a very bold statement. They were well aware that if they took actions that resulted in a safe and effective therapy from not getting to terminal cancer patients who needed it, that they have done something seriously wrong. The decision to take the "due" out of due process was a deliberate wrongdoing and more then just run of the mill negligent conduct.

(Doc. # 46 at 18.)

 Again, however, Plaintiff's argument misses the mark. That is, deter-

mining whether the right claimed was clearly established is not dependent upon the sophistication of the alleged wrongdoers. Instead, to establish that a right was clearly established in a qualified immunity analysis, this Court must look first to the decisions of the United States Supreme Court and then to the case law of this circuit. *Gragg*, 289 F.3d at 964 (citing *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993) which noted that "it is only in extraordinary cases that we can look beyond Supreme Court and Sixth Circuit precedent to find clearly established law"); *see also Fisher v. Harden*, 398 F.3d 837, 846–47 (6th Cir.2005) (same). For a right to be considered clearly established, the case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.* (citing *Saylor v. Bd. of Educ. of Harlan County*, 118 F.3d 507, 515 (6th Cir.1997)). *See also Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (holding that a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

Plaintiff's assertion falls far short of establishing the rights he claims were violated were clearly established. This alone, provides Defendants with qualified immunity on Plaintiff's due process and equal protection claims.

### B. 42 U.S.C. § 1985 and § 1986

 In the Amended Complaint, Plaintiff alleges that Pazdur and Scher "conspired to cause injury and deny equal protection of the law" to AIPC patients in violation of 42 U.S.C. §§ 1985, 1986. (Doc. # 22 at 29). Plaintiff also claims that the

"co-conspirators" shared the "common objective to obtain a denial or non approval of the BLA for Provenge even though they knew that the decision would hurt all prostate cancer sufferers." *Id.* at 30.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire ..., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).[3] Section 1986, in turn, addresses actions for failure to prevent such conspiracies:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented....

42 U.S.C. § 1986. Thus, to effectuate a cause of action under 42 U.S.C. § 1986, a plaintiff must also state a cause of action under 42 U.S.C. § 1985. *See Bass v. Robinson,* 167 F.3d 1041, 1050–51 n. 5 (6th Cir.1999); *Estate of Bing v. City of Whitehall,* 373 F.Supp.2d 770 (S.D.Ohio 2005), *rev'd in part on other grounds,* 456 F.3d 555 (6th Cir.2006).

 To state a claim for a private conspiracy, the conspiracy "requires an intent to deprive persons of a right guaranteed against private impairment." *Bray,* 506 U.S. at 274, 113 S.Ct. 753. Plaintiff claims that Pazdur and Scher deprived prostate cancer patients of equal protection and of substantive due process. (Doc. # 22 at 29, 30.) Plaintiff has failed to allege cognizable violations of equal protection or of substantive due process for the reasons set forth above. Further, because Plaintiff has demonstrated no infringement of any clearly established constitutional right, Pazdur and Scher are entitled to qualified immunity from the claims brought under § 1985(3) to the same extent as the other constitutional claims alleged by Plaintiff.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's 42 U.S.C. §§ 1985, 1986 claims.

### D. State Law Claims

 Plaintiff alleges, in the Amended Complaint, wrongful death and a cause of action under the "Good Samaritan" doctrine. (Doc. # 22 at 32, 33.) Defendants argue that these claims must be dismissed because the United States Attorney has certified that Pazdur and Scher were acting within the scope of their employment pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. (Doc. ## 34, 35.) This Court agrees.

---

**3.** Plaintiff did not identify the subsection of 42 U.S.C. § 1985 on which it relies; however, subsections (1) "Preventing an officer from performing duties" and (2) "Obstructing justice; intimidating party, witness, or juror" are plainly inapplicable.

The FTCA provides a limited waiver of sovereign immunity, and it is the sole source of subject matter jurisdiction over tort claims arising from negligent or wrongful acts of federal employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee....").

■ Federal employees enjoy absolute immunity for state common law torts they commit while acting within the scope of their employment. *See* 28 U.S.C. § 2679(d)(1); *Osborn v. Haley*, 549 U.S. ——, 127 S.Ct. 881, 887, 166 L.Ed.2d 819 (2007); *see also Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir.2005). The FTCA provides that when a federal employee is sued in tort, the United States Attorney for that district must certify whether the employee was acting within the scope of his office or employment at the time of the allegedly tortious act. 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.4. If the United States Attorney certifies that the employee acted within the scope of his office or employment, then (1) the United States is substituted as the party defendant, and (2) the plaintiff may sue the United States only in accordance with the FTCA. 28 U.S.C. § 2679(d)(1); *Osborn*, 127 S.Ct. at 887. Any state law tort claims "shall be deemed an action against the United States," and this is Plaintiff's exclusive remedy. 28 U.S.C. § 2679(a), (d)(1) and (4). Absolute immunity applies even where the FTCA bars a plaintiff's recovery. *United States v. Smith*, 499 U.S. 160, 166, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

■ The FTCA requires that tort claims be submitted to the appropriate federal agency for administrative consideration before an action upon those claims is instituted. 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim ... unless the claimant shall have first presented the claim to the appropriate Federal agency ...."); *see id.* § 2401(b); *McNeil v. United States*, 508 U.S. 106, 107, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Singleton v. United States*, 277 F.3d 864, 872–73 (6th Cir.2002) ("failure to file a timely administrative claim under the FTCA bars federal jurisdiction"). This requirement of exhaustion of administrative tort remedies is an absolute prerequisite to federal district court jurisdiction, and it is neither capable of being waived nor subject to estoppel. *McNeil*, 508 U.S. at 107, 113, 113 S.Ct. 1980 (applying rule of "strict adherence" to *pro se* prisoner who instituted his complaint prior to exhausting administrative tort remedies under the FTCA); *see also Celestine*, 403 F.3d at 84.

Consequently, this Court lacks subject matter jurisdiction on any state law claims against the United States because Plaintiff has not presented an administrative tort claim and had that claim finally denied by the appropriate federal agency. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's state law claims.

### E. Personal Jurisdiction

In Defendants' Motion to Dismiss, Defendants argue that Plaintiff has failed to set forth a *prima facie* case of personal jurisdiction over Pazdur and Scher. Based on the Court's conclusions *supra*, this argument is rendered moot.

## III. PLAINTIFF'S MOTIONS

### A. Motion for an Order to Comply and Motion for Leave to File Amended Complaint

Plaintiff's Motion for an Order to Comply (Doc. # 29) and Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. # 48) are intertwined, as Plaintiff explains:

Plaintiffs brought to this courts (*sic*) attention the Defendant's violation of The Freedom of Information Act (FOIA), by way of motion [*i.e.*, Plaintiff's Motion for an Order to Comply (Doc. # 29)], so as not (*sic*) have to amend and re file a rather weighty First Amended Complaint. Defendants are indeed correct such matter should be properly brought before this court by way of a Complaint so their assertion forces this request to so amend the Complaint. The Defendants apparently prefer that the FOIA violation be part of the complaint rather then by motion in the already pending case. That now being made an issue to this Court, at Defendants (*sic*) request, Plaintiff could now either file a separate Complaint and then seek to consolidate it with this case, or seek leave to file an amended complaint to add the FOIA claim. Plaintiff has chosen to first seek leave to file an amended complaint.

(Doc. # 48 at 2.) Thus, as Plaintiff's explanation elucidates, upon the filing of Plaintiff's Motion for Leave to File a Second Amended Complaint, Plaintiff's Motion for an Order to Comply was rendered moot.

 With regard to Plaintiff's Motion for Leave to File a Second Amended Complaint, Federal Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The grant or denial of a request to amend a complaint is left to the broad discretion of the trial court. *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir.1990).

In the instant action, Plaintiff contends that its proposed amendment would relate to whether the FDA has complied with the Freedom of Information Act in its response to Plaintiff's request for information. The proposition, however, simply has no relationship to the original suit, *i.e.*, consideration of whether actions taken by employees of a federal agency violate the United States Constitution. Thus, the proposed amendment would radically shift the scope and nature of this litigation and is, therefore, not properly allowed. *See Cottman Transmission Sys., LLC v. Kershner*, 492 F.Supp.2d 461, 473 (E.D.Pa. 2007) (denying motion to amend because it "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action"). Moreover, Plaintiff is in no way prejudiced by denial of its motion to amend because it is free to bring the proposed amended complaint as a separate, new action.

Consequently, the Court **DENIES** Plaintiff's Motion for Leave to File a Second Amended Complaint.

### B. Plaintiff's Motion to Strike

In Plaintiff's Motion to Strike (Doc. # 60), Plaintiff argues that Defendants untimely filed their reply in support of their Motion to Dismiss Scher and Pazdur. Plaintiff, however, is mistaken.

As Defendants correctly explain,

Plaintiff's latest filing, moving to strike the Reply of the individually named Defendants (Doc. 51) is based on the faulty premise that a party may receive an extension to file a pleading and "eat up" all of the time previously granted for the opposing party to reply. In issuing its scheduling Order (Doc. 27), the Court

directed the parties to follow a simple expedited schedule; motions to dismiss by 10/5/07, responses due 14 days later (10/19/07), with one week (10/26/07) to reply. Both Motions to Dismiss were filed on October 5th. Plaintiff filed its response to the official capacity motion to dismiss on October 19th. However, it sought leave, on October 19th, to file its response to the individual capacity motion to dismiss, which Defendants did not oppose (Doc. 44). Said response was filed on October 24th. The individual capacity Defendants had seven days to reply, and timely filed Doc. 51 on October 31st.

(Doc. # 61 at 1.)

Based on Defendants' analysis, with which this Court agrees, the Court **DENIES** Plaintiff's Motion to Strike.

## IV. CONCLUSION

Based upon the foregoing, the Court **DENIES AS MOOT** Plaintiff's Motion for an Order to Comply (Doc. # 29), **GRANTS** Defendants' Motion to Dismiss (Doc. # 37), **DENIES** Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. # 48), and **DENIES** Plaintiff's Motion to Strike (Doc. # 60). The Court **DIRECTS** the Clerk to enter **FINAL JUDGMENT** in favor of Defendants. However, the Court retains jurisdiction over the pending motion for sanctions.

**IT IS SO ORDERED.**